IN THE UNITED STATE BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § § | |
| LEONARDO REZNICK | § § | CASE NO. 04-32234-H5-7 |
| MARCEL MEICLER, INDIVIDUALLY, MARCEL MEICLER, TRUSTEE, MURIEL MEICLER, DINKARA LEASING CORPORATION AND SAROSH COLLECTOR | § § § § § § | ADVERSARY NO. 04-03642 |
| V. | § § | |
| LEONARDO REZNICK | § | |

**JOINT MOTION FOR ORDER APPROVING COMPROMISE OF CONTROVERSY**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

> IF YOU WANT A HEARING, YOU MUST REQUEST ONE IN WRITING, AND YOU MUST RESPOND SPECIFICALLY TO EACH PARAGRAPH OF THIS PLEADING. YOU MUST FILE YOUR RESPONSE WITH THE CLERK OF THE BANKRUPTCY COURT WITHIN TWENTY (20) DAYS FROM THE DATE YOU WERE SERVED AND GIVE A COPY TO THE PERSON WHO SENT YOU THE NOTICE; OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF.
>
> IF A PARTY REQUESTS EMERGENCY CONSIDERATION, THE COURT MAY ACT EXPEDITIOUSLY ON THE MATTER. IF THE COURT ALLOWS A SHORTER RESPONSE TIME THAN TWENTY (20) DAYS, YOU MUST RESPOND WITHIN THAT TIME. IF THE COURT SETS AN EMERGENCY HEARING BEFORE THE RESPONSE TIME WILL EXPIRE, ONLY ATTENDANCE AT THE HEARING IS NECESSARY TO PRESERVE YOUR RIGHTS. IF AN EMERGENCY HEARING IS NOT SET, YOU MUST RESPOND BEFORE THE RESPONSE TIME EXPIRES.

**COMES NOW**, through undersigned counsel, Leonardo Reznick ("Reznick") and Marcel Meicler, Individually, Marcel Meicler, Trustee, Muriel Meicler, Dinkara Leasing Corporation and Sarosh Collector (the "Meicler Entities" and/or "Plaintiffs") who hereby move this Court pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure for entry of an

Order Approving Compromise of Controversy and respectfully represents as follows:

## I. JURISDICTION AND VENUE

1. This Court has jurisdiction over this Motion by virtue of 28 U.S.C. §§157 and 1334. This motion is a core proceeding pursuant to 28 U.S.C. §157(b)(2).

2. Venue in the Southern District of Texas, Houston Division is proper pursuant to 28 U.S.C. §1401.

## II. BACKGROUND

3. Leonardo Reznick (the "Debtor") is a Debtor in the above styled Chapter 7 case.

4. On February 2, 2004, the Plaintiff's filed an involuntary chapter 7 bankruptcy petition against Debtor. On April 14, 2004, with the consent of the Debtor, the Court entered an order for relief under Chapter 7 of the United States Bankruptcy Code.

5. On October 29, 2004, Meicler filed the captioned Adversary Proceeding against the Debtors.

## III. BACKGROUND FACTS

6. The Debtor had previously filed a Chapter 13 proceeding on March 17, 2003. In connection with that case, the Debtor objected to claims filed by the Meicler Entities. The Meicler Entities' claims arise from a business arrangement between Reznick, Marcel Meicler and Sarosh Collector to run a bus service in Cancun, Mexico. The parties executed written agreements describing the terms of their business arrangements which involved contributions of cash and buses, bank loans, and stock distribution between the parties. The parties formed Dinkara Leasing Corporation, a Texas corporation, to further this business, as well as two additional Mexican corporations. Reznick's interest in the Mexican corporations Reznick alleged was to be held by an associate, Miguel Angel Ortiz Novoa. As of April 1999, two buses which

were to have been transferred to the business by Reznick had been relocated to Cancun to begin service, but title to the buses was never transferred to the company. At that time, additional buses were to be contributed to the business by Reznick, and Meicler made an additional cash contribution to the company based on Reznick's representations. Further, Muriel Meicler lent $60,000.00 to the venture, guaranteed by one-half by Reznick and one-half by Marcel Meicler. Reznick did not fulfill his obligations under the agreements and the loan from Muriel Meicler was not repaid.

7. In addition to the foregoing business venture, Marcel Meicler and Samuel Wigisser, the Debtor's father-in-law, owned Sugar Land Baking Corporation. In 2000, Meicler sold his interest in the corporation back to the company, but the company never paid for the stock. Reznick guaranteed payment for the stock. Additionally, Reznick leased a vehicle from Meicler, charges for which remain unsatisfied and Reznick is obligated to Sarosh Collector in connection with the purchase of another vehicle.

8. Based on the foregoing, the Meicler Entities filed claims against the Debtor's original Chapter 13 bankruptcy estate. The Debtor alleged that the claimants were precluded from asserting their claims because this Court had previously dismissed an involuntary petition against Debtor brought by some of the Meicler Entities.

9. The Court overruled that objection and determined the issues of the present litigation and the prior litigation differed and res judicata did not preclude liquidation of the claims of the Meicler Entities.

10. Based on the sums contributed to the business venture by the claimants and Reznick's failure to fulfill his obligations to the venture as well as the additional obligations which Reznick failed to fulfill, the Court found that the creditors' claims were allowed in the

amounts filed. Specifically, the Court found that the claim of Dinkara Leasing was allowed in the amount of $227,890.00; the claim of Marcel Meicler, Trustee, was allowed in the amount of $100,000.00; the claim of Marcel Meicler was allowed in the amount of $45,460.86; the claim of Muriel Meicler was allowed in the amount of $46,816.76; and the claim of Sarosh Collector was allowed in the amount of $13,671.49. The previously listed claims are referred to hereafter as the "Meicler Claims."

11. In addition to Debtor's interests in the Mexican corporations, which the Court determined may have value, the evidence at trial in the Chapter 13 case, showed that Reznick was the holder of a promissory note in the face amount of $1,000,000.00 payable to Reznick executed by Paul Ponte and secured by certain real property (the "Ponte Note") on which over $600,000.00 remained due. Although the Debtor alleged that the Ponte Note had been assigned to his mother, Bertha Bloch, the evidence showed that Ponte executed the note in favor of Reznick and that Reznick has executed real property releases in connection with the note. No written assignment of the note to Bertha Bloch was produced in Debtor's prior Chapter 13 case. The Court found that Debtor's Chapter 13 bankruptcy estate owned the promissory note and that it may be collectible. Paul Ponte was not a party to any of the Reznick Chapter 13 proceedings. The Ponte Note is the subject of a separate cause of action currently being pursued by the Chapter 7 Trustee Debtor's underlying bankruptcy case. That action is not affected by this proceeding.

13. All of the foregoing allegations were vigorously disputed by the Debtor. All of the allegations of wrongdoing on the part of Reznick are still disputed. This settlement is not an acknowledgement of any liability by the Debtor. The Adversary Complaint being settled alleged both Section 523 and Section 727 claims.

14. While the Debtor has vigorously disputed the foregoing claims, the settlement attempts in large part to recover funds for actual losses expended by the Meicler Entities which were the basis for the Section 523 claims. To the extent the Meicler Entities benefit, it will also in part reduce the Meicler's Entities claims against the Estate. Any excess funds received by Dinkara after the satisfaction of its liabilities also go in part to the Estate.

15. At the time of the conversion of the Debtor's Chapter 13 to Chapter 7, Reznick, it is alleged, through his one-half ownership of Dinkara Leasing, continued to own, possess and/or assert control over assets located in Mexico. Notwithstanding repeated demands by the creditors of the estate, the Debtor refused and continued to refuse to return or liquidate those assets Meicler alleged were in part owned by the Debtor. This settlement attempts to liquidate those assets for the benefit of all creditors. However, that creditor body is composed in largest part by the Meicler Entities.

## IV. THE SETTLEMENT TERMS

16. The parties to the Settlement agree to liquidate the assets in the two Mexican subsidiaries (as described in Exhibit "A" with estimated values) and those of Dinkara Leasing Corporation ("Dinkara Leasing") listed on the balance sheet of Dinkara attached as Exhibit "B" in the following manner:

> a. Reznick will instruct Mr. Novoa in Mexico to communicate with Meicler and to provide him *via fax or email* with a full accounting and any and all information requested by Meicler about the assets and operations of the Mexican subsidiaries. Communications between Novoa, Meicler and Reznick will be in writing with copies provided to all parties.
>
> b. Reznick will instruct Mr. Novoa to liquidate the assets using his best judgment in the method and manner, including a combination of the following: approaching transportation companies; running ads in the newspaper in Mexico City; parking the buses in a visible area with for sale signs; visiting with the buses outside Mexico City and

looking for customers in towns that need these types of buses, or any other method he feels will bring the best price.

c.   After the disposition of the buses, Mr. Novoa will sell the tools using the best method to maximize their price.

d.   Mr. Novoa will report at least weekly in writing via fax or email to both Meicler and Reznick on the progress of the sale process. If an offer is received, Mr. Novoa will report the offer in complete details, including financial information about the purchaser, immediately to Meicler who will have the authority to accept or reject it.

e.   When a bus is sold, any proceeds, less costs of sales (to be capped at 5% of the sales price unless Meicler provides written authorization to expend additional funds) will be wired to and held in the trust account of Meicler's counsel Craig Cavalier, for the benefit of Dinkara Leasing. The parties agree that the attached balance sheet of Dinkara Leasing represents the current obligations outstanding of Dinkara Leasing and that Cavalier may disburse proceeds to Meicler to be used to satisfy those outstanding obligations of Dinkara as set forth on Dinkara's balance sheet. The remaining funds, if any will be distributed ½ to the Reznick Trustee and ½ to Meicler to be credited to any remaining claims of the Meicler Estate.

f.   When a bus is sold, Mr. Novoa will forward to Meicler and Reznick an accounting of the sales price and costs of the sale.

g.   The buses will be listed for a period of two months beginning on the date of an Order approving this Compromise at the prices on the attached list.

h.   After the expiration of the initial two month sales period, any unsold buses shall be listed for sale at 80% of the original price for a period of two months.

i.   After the expiration of the second two month sales period, any unsold buses shall be listed for sale at 60% of the original price for a period of two months.

j.   After the third two month period has expired, any unsold buses shall be sold for whatever price is approved by Meicler, which will not be unreasonably withheld.

k   After Novoa or Reznick provide the accounting information including the information required in Paragraphs p.(i) – (iii) below, Meicler will provide a final accounting of the liquidation of the Mexican subsidiaries and the resulting funds transferred to Dinkara Leasing to Reznick's Chapter 7 Trustee and any amounts remaining after Dinkara's debts have been paid (according to the attached balance sheet) will be split 50/50 between Meicler and the Chapter 7 Trustee. The Trustee will then convey Reznick's worthless stock in Dinkara Leasing Corporation to Meicler.

l.   Novoa will liquidate the two Mexican corporations Transportaciones Turisticas Omega, S.A. de C.V. and Arrendamiento de Automotores Maya, S.A. de C.V. after all the assets have been sold.

m. To provide a method for enforcement of Reznick's obligations under this agreement, Reznick will sign an agreed judgment in the amount of $200,000 (the "Judgment"), which form of Judgment is attached hereto as Exhibit "C", which shall be neither recorded, abstracted nor executed upon so long as Reznick complies with his obligations under the Compromise. If payments are made to creditors by Reznick's Chapter 7 Trustee, the Meicler claims shall not be entitled to receive a double recovery from the Judgment provided for in this Compromise.

n. Reznick will have fulfilled his obligations under this Compromise after all the Dinkara Leasing assets in Mexico have been sold, all the funds have been collected and transferred to Mr. Cavalier and all requested information has been provided. The Judgment will then be released back to Mr. Black, counsel for Reznick. If the Judgment is not released as requested and Meicler refuses to provide the specific reason for the refusal to release the Judgment, the Court shall retain jurisdiction to require its release. If Reznick has otherwise complied with this Compromise and performed his obligations hereunder, he will be deemed to have fulfilled his obligations relating to the Compromise at the expiration of the eight (8) month period beginning on the date of an Order approving this Compromise and the Judgment described below shall be released. If additional work is required Reznick will assist Meicler in completing that work notwithstanding that the Judgment has been released

o. Meicler must give a specific notice in writing of any asserted default on the part of Reznick or Mr. Novoa to Reznick and his counsel listed below. Reznick shall have 7 days to cure any asserted default and shall give written notice describing the steps taken to Meicler and his counsel listed below.

p. In addition to the foregoing within ten (10) days of the filing of this Motion To Compromise Reznick will provide the following information;

    (i) the exact details of the OM 1 transaction, including the date of sale, name of purchaser with address and telephone number, price, down payment, payment history, details of the use of funds with dates and reason, copy of bank statements and ledger.

    (ii). the details of the reconstruction costs of OM 2, how much money was provided by the buyer, the buyer's address and telephone number, the exact date of the sale and the sales prices, down payment and terms. Additionally, the amounts now being sent and how much longer until the obligation is paid. Also Reznick will direct Novoa to provide an accounting of payments to date.

    (iii) when was the city bus known as PL 2 sold to Mr. Arturo Ficachi for approximately $40,000? Also how much down, how many payments were made and where is the money?

    (iv) For each of the mortgages Reznick will disclose if any payments were ever made to Reznick or his wife by the respective borrowers, even if they were endorsed and send to Ponte or some other entity.

## V. THE BEST INTEREST OF THE ESTATE

16. Rule 9019 of the Federal Rules of Bankruptcy Procedure provides that after notice and hearing, this Court may approve a compromise or settlement. Counsel for both Meicler and Reznick submit that the proposed settlement as set forth in this Motion is in the best interest of the Estate when viewed in light of the factors for evaluation of the propriety of the settlement, including:

   a. comparing the terms of the compromise with the likely rewards of litigation;

   b. the probability of success in litigation, with due consideration for the uncertainties of law and fact;

   c. the complexity and likely duration of litigation and any attendant expense, inconvenience and delay; and

   d. all other factors bearing on the wisdom of the settlement.

See *Protective Committee for Independent Stockholders of TMT Trailer Ferry v. Anderson*, 390 U.S. 414, 425 (1968); *Matter of Foster Mortg. Corp.*, 68 F.3d 914, 917 (5th Cir. 1995); *In Re Jackson Brewing Co.*, 624 F.2d 599, 609 (5th Cir. 1980).

17. The compromise reached between Meicler and Reznick is in the best interest of the bankruptcy estate and its creditors. Counsel for both Meicler and Reznick have evaluated the terms of the compromise with due consideration of the likelihood of success together with the always-present uncertainties and complexities involved in litigation of this nature. Counsel for Meicler and Reznick have also considered the cost of litigating the claims and the associated delays in realizing any recovery. The settlement does not represent a recovery to the estate since the Section 727 claim, although being settled, is not the reason for the payment of the funds. The alleged claims under Section 727 have been resolved by the Debtor's full disclosure of information regarding the location of the assets in Mexico.

18. The Debtor's honest and forthright statements will also ensure potential additional recoveries in the Trustee's remaining litigation

WHEREFORE, the Meicler Entities and Leonardo Reznick respectfully pray that the Court approve the Settlement and for such other and further relief as is just and equitable.

Respectfully submitted,

CRAIG H. CAVALIER
3555 Timmons Lane, Suite 1450
Houston, Texas 77027
(713) 621-4720 - Telephone
(713) 621-4779 - Telefax

By: /s/ Craig H. Cavalier
Craig H. Cavalier
Federal I.D. No. 2958
State Bar No. 04022075

ATTORNEY FOR PLAINTIFFS,
MARCEL MEICLER, INDIVIDUALLY,
MARCEL MEICLER, TRUSTEE,
MURIEL MEICLER, DINKARA LEASING
CORPORATION AND SAROSH COLLECTOR

FULBRIGHT & JAWORSKI, L.L.P.
1301 McKinney, Suite 4100
Houston, Texas 77002
(713) 651-5151 - Telephone
(713) 651-5246 – Telefax

By: /s/ R. Andrew Black
R. Andrew Black
State Bar No. 02375110
S.D. Tex. No. 09040

ATTORNEY FOR DEFENDANT
LEONARDO REZNICK

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served by United States First Class Mail, postage prepaid, electronic mail and/or via facsimile transmission to the party(ies) listed below on this 17th day of June, 2005.

Robert Andrew Black
Fulbright & Jaworski, LLP
1301 McKinney, Suite 5100
Houston, TX 77010

John Vincent Burger
Burger Law Firm
3730 Kirby Drive, Suite 1200
Houston, TX 77098

Ben Floyd
Office of Trustee
700 Louisiana, Suite 4600
Houston, Texas 77002

Rhonda Chandler
Munsch Hardt Kopf & Harr, PC
700 Louisiana, Suite 4600
Houston, Texas 77002

Office of the U.S. Trustee
515 Rusk Avenue, Suite 3516
Houston, Texas 77002

Leonardo Reznick
103 South Hall
Sugar Land, TX 77478

Internal Revenue Service
Stop 5024 Special Procedures
1919 Smith Street
Houston, TX 77002

Sarosh Collector
3000 Richmond Ave., Suite 270
Houston, TX 77098

First USA Bank
P.O. Box 50882
Henderson, NV 89016

US Food Services
111 Alliant Drive
Houston, TX 77032

Paul M. Ponte
1379 Tucker Road
N. Dartmouth, MA 02747

/s/ Craig H. Cavalier
Craig H. Cavalier